[L. A. No. 22050. In Bank. Oct. 21, 1952.]

ARNOLD L. PETERSON et al., Respondents, v. RUSSELL F. JOHNSON et al., Appellants.

John F. Poole and Alvan M. Palmer for Appellants.

Holbrook & Tarr and W. Sumner Holbrook, Jr., for Respondents.

Ray L. Chesebro, City Attorney (Los Angeles), Louis A. Babior, and Spencer L. Halverson, Deputy City Attorneys, as Amici Curiae on behalf of Respondents.

TRAYNOR, J.—Defendants appeal from a judgment quieting plaintiffs' title to 80 acres of land in Los Angeles County.

The land was assessed to Russell F. Johnson in 1931 as an undivided part of 120 acres owned by him. In July of that year, he conveyed the entire parcel to his wife, Myrtle N. Johnson, who failed to pay the taxes as they became due. The delinquent tax list for the year 1931 was published, giving

notice that the 120-acre parcel assessed to Russell F. Johnson would be sold to the state by operation of law unless $380.06 of taxes, penalties, and costs were paid. Neither Mr. nor Mrs. Johnson paid this amount or any part thereof.

In 1934, Mrs. Johnson conveyed 40 of the 120 acres to Josephine Palomara, who in turn conveyed them to plaintiff Peterson. Peterson redeemed the 40 acres under the partial redemption statute (Pol. Code, § 3818, now Rev. & Tax. Code, §§ 4146-4155). When Peterson applied for redemption of the 40 acres, the assessor placed a separate valuation on the part sought to be redeemed for each tax delinquent year. The remaining acres were valued at the difference between the original valuation and the valuation placed on the 40 acres. The taxes were prorated so that each part of the land was charged with the same amount of taxes that each would have borne had the assessor made a separate assessment originally.

In 1937, the state took title to the remaining 80 acres under a tax deed. The deed described only the 80 unredeemed acres, and recited that they had been sold to the state in 1932 for $258.06. This figure was the unpaid balance of the 1931 taxes, penalties, and costs that had been prorated to the 80 acres. In May, 1939, Mrs. Johnson died intestate, leaving her husband and two sons as heirs. Defendant, Warren R. Johnson, one of the sons, was in military service from 1942 to 1945. In 1946, the sons assigned their interests in their mother's estate to their father. In 1945, Peterson and Smith bought the 80 acres from the state, and in 1947 brought this action to quiet their title thereto.

The provisions of the partial redemption statute (Pol. Code, § 3818; now Rev. & Tax. Code, § 4154) require the assessor to place a valuation on the parcel to be redeemed for the purpose of prorating the taxes. Defendants contend that the statute is unconstitutional because it does not provide for an equalization hearing of the split valuation, and that the court therefore erred in rejecting defendants' offer to prove that the valuation placed on the 40 acres was much less than its true value and that an excessive valuation was therefore placed on the remaining 80 acres and in sustaining objections to the introduction of evidence as to the value of the property redeemed.

This contention confuses the rights of an owner before a tax upon his property becomes final and his rights after the property has been sold to the state for nonpayment of the tax. Before an ad valorem tax becomes final, the tax-

payer must be given an opportunity to have the assessor's valuation reviewed by an impartial board of equalization or other tribunal. (Cal. Const., art. XIII, § 9; *Bandini Estate Co.* v. *Los Angeles County,* 28 Cal.App.2d 224, 230 [82 P.2d 185], and cases cited therein.) ▉ After the assessment has been equalized, or the taxpayer has failed to avail himself of the right to an equalization hearing, and the tax levied against the property has become final, the taxpayer has no further right to an equalization hearing. ▉ If the property is thereafter sold to the state for nonpayment of the tax, it can be redeemed only upon the terms prescribed by the Legislature. "There is no constitutional right to redeem property that has been sold to the state for the nonpayment of taxes. 'The right of redemption comes entirely from the statute, and is subject to all the limitations ·and conditions therein imposed.' (*Quinn* v. *Kenney,* 47 Cal. 147, 150.)" (*Sutter-Yuba Inv. Co.* v. *Waste,* 21 Cal.2d 781, 785 [136 P.2d 11].) ▉ Thus, one who claims a partial interest in taxsold property may be required to pay all of the taxes, penalties, and costs to effect a redemption. (*Mayo* v. *Marshall,* 23 Cal. 594, 595.) It is only since 1917 that a purchaser of part of the property sold to the state for nonpayment of taxes could redeem that part for less than the amount necessary to redeem the whole.

▉ The partial redemption provisions enable an owner of tax-sold property to take advantage of a market for part of the property where none exists for the whole. The purchaser not only gives him the purchase price, but reduces the amount necessary to be paid by the vendor should he wish to redeem. Moreover, it is the owner of the tax-sold property who creates the situation in which two persons rather than one become interested in redemption. The Legislature has seen fit to accommodate the parties by a division of the right to redeem, but neither party may demand that the procedure be other than that provided. ▉ Under the statute, the valuation of the assessor is final. The parties may, of course, contract in advance as to the amount to be paid by each and thus avoid any uncertainty as to the valuations the assessor may place upon the separate parts.

It is true that at one time (1917-1927), the Legislature provided for valuation by the auditor and prescribed a procedure for filing and hearing protests regarding the proposed division. As amended in 1927, the statute requires the auditor to secure the valuation from the assessor and omits the pro-

test procedure. The Legislature apparently concluded that the assessor, who made the original valuation, could arrive at the correct division thereof without the necessity of further proceedings that would delay partial redemption.

Defendants also contend that the tax proceedings were void, on the ground that the description and the amount of taxes set forth in the 1931 delinquent tax list do not correspond to those in the 1937 tax deed to the state. Defendants do not deny that the tax list correctly sets forth the amount of taxes, penalties, and costs owed the state or that the state had the power to declare the entire 120 acres sold for that amount. The proration of taxes between the property redeemed and the part not redeemed is inherent in the whole partial redemption procedure. At the time of the tax deed to the state in 1937, the 40 acres had been redeemed by Peterson. Since taxes remained unpaid only on the 80 acres, only 80 acres could be deeded to the state. Thus, after a partial redemption, the area subsequently deeded to the state and the amount for which it is sold will necessarily be less than that set forth in the delinquent list.

Defendants contend that the proceedings after partial redemption were void on the ground that the assessor placed separate valuations on the 40 acres for each tax-delinquent year. Section 3818 of the Political Code at the time of the partial redemption provided that the auditor was to submit a description of the property sought to be redeemed to the assessor, "who must place a valuation thereon." The auditor was then to estimate the amount of taxes due thereon. Defendants interpret this language as authorizing the assessor to place only one valuation on the part to be redeemed and not a separate valuation for each year.

Property that has been sold to the state by operation of law is assessed as if no sale had taken place. (Pol. Code, § 3813.) Taxes thereafter levied must be paid in order to effect a redemption. (Pol. Code, § 3817.) They are also part of the taxes to be apportioned at the time of partial redemption. Since property values may fluctuate from year to year, the valuation upon which the apportionment is based must reflect such changes. To accomplish the purpose of the foregoing statutes, it was therefore necessary for the assessor to place a separate valuation on the property for each year. Section 4154 of the Revenue and Taxation Code makes this clear by providing: "The assessor shall immediately place a separate valuation on the parcel for each year in which it was

delinquent and not separately valued. . . ." (See Rev. & Tax. Code, § 2.)

Defendants also contend that the tax proceedings were invalid, on the grounds that the dollar sign was omitted from the 1931 published delinquent list and that the original assessment roll had been stamped "redeemed" rather than "part-redeemed." These irregularities have long since been validated by the curative act of 1943 (Stats. 1943, p. 1993). (*Wall* v. *M. & R. Sheep Co.*, 33 Cal.2d 768 [205 P.2d 14].)

Defendants contend finally that the provisions of the Soldiers and Sailors Civil Relief Act render the sale by the state of the 80 acres invalid. Warren R. Johnson was in the military service at the time of this sale in February, 1945. That act is applicable only to real property owned and occupied for dwelling, agricultural, or business purposes by a person in military service. (*McCaslin* v. *Hamblen*, 37 Cal.2d 196, 202 [231 P.2d 1].) Warren R. Johnson testified that neither he nor his dependents occupied the property for any of the specified purposes at the time of his military service. Thus, by virtue of its express provisions, the act is inapplicable here.

Judgment affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.