[S. F. No. 22541. In Bank. Nov. 9, 1967.]

ARTHUR L. SMITH et al., Plaintiffs and Appellants, v. JIMMIE ANDERSON, as Tax Collector, etc., et al., Defendants and Respondents.

636

Franklin A. Dill and William B. Boone for Plaintiffs and Appellants.

Richard M. Ramsey, County Counsel, and John C. Gaffney, Assistant County Counsel, for Defendants and Respondents.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead, Deputy Attorney General, Harold W. Kennedy, County Counsel (Los Angeles), A. R. Early, Assistant County Counsel, Robert M. Wash, County Counsel (Fresno), and Herbert L. Ashby, County Counsel (Ventura), as Amici Curiae on behalf of Defendants and Respondents.

BURKE, J.—Plaintiffs appeal from a judgment entered upon the sustaining of a demurrer without leave to amend to their petition for mandate. Defendant Anderson is the Tax Collector-Redemption Officer and defendant McMullen is the Assessor of Sonoma County. A hearing was granted by this court, after decision by the Court of Appeal, First Appellate District, Division One, for the purpose of giving further study to the problems presented. After such study we have concluded that the opinion of the Court of Appeal, prepared by Mr. Presiding Justice Molinari and concurred in by Justices Sims and Elkington, correctly treats and disposes of the issues involved, and it is therefore adopted as and for the opinion of this court, with certain further comments of our own pertinent to contentions urged. Such opinion (with appropriate deletions and additions as indicated) is as follows:[1]

[ ] The question presented on appeal is whether upon the request of an owner of an undivided interest in real property, which property has been sold and deeded to the state for delinquent taxes, the county redemption officer and assessor are required under Revenue and Taxation Code sections 4153 and 4154 to separately value the owner's undivided

---

[1]Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. (See *Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381, 383, fn. 1 [19 Cal. Rptr. 662, 369 P.2d 262].)

interest in the property in order that he might separately redeem his interest. We have determined that this question must be answered in the affirmative and, accordingly, that the judgment must be reversed.

By their petition for writ of mandate appellants Smith and Tallarico alleged that by deed recorded on November 23, 1965, they each became the owners in joint tenancy of an undivided 190/720th interest in certain real property in Sonoma County, which property is described on the county assessment roll as ''Parcel No. 77-17-1''; that this entire parcel had been sold to the State of California for delinquent taxes in 1952 and deeded to the state in 1957; that neither the Smiths' nor the Tallaricos' interest in this parcel of property has a separate valuation for any year; that appellants have presented their deeds to respondent Anderson, requesting him to obtain a separate valuation for appellants' respective undivided interests in the subject property so that appellants may redeem these interests, and to furnish appellants with the separate estimates necessary to redeem their undivided interests in the subject property; that respondent Anderson has refused and still refuses to make such request to respondent McMullen and to furnish appellants with such estimates; and that respondent McMullen has informed appellants that he will not agree to a separate valuation of their respective undivided interests.

Based upon these allegations appellants prayed for the issuance of a writ of mandate compelling respondent Anderson to request of respondent McMullen separate valuations for appellants' respective undivided interests in the subject property; further compelling respondent McMullen to furnish such separate valuations so that appellants may redeem their respective undivided interests in the subject property; further compelling respondent Anderson to accept the amounts so computed as being the correct amounts necessary to redeem appellants' respective interests; and finally compelling respondent McMullen to separately assess appellants' respective interests in the subject property for both current and future taxes.

In support of their contention that the petition states a case in mandate, appellants assert that based upon the allegation that they requested a valuation pursuant to section 4151 of the Revenue and Taxation Code,[2] a duty devolved upon

---

[2]Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code. Section 4151 provides specifically as follows: ''Any person claiming an interest, evidenced by presentation of a duly executed

respondents by virtue of sections 4153 and 4154,[3] to make separate valuations of appellants' interests in the subject property. Respondents, on the other hand, take the position that appellants do not fall within the class of persons who are entitled to apply for separate valuation under section 4151 and that therefore sections 4153 and 4154 impose no duty upon respondents to make such separate valuations. From the respective positions of appellants and respondents it becomes apparent that we are called upon on this appeal to interpret section 4151 and particularly to determine whether this section entitles the owner of an undivided interest in tax-sold and tax-deeded property to request a separate valuation of his undivided interest in that property in order to redeem such interest. ▆ We should point out here that since the right of redemption comes entirely from statute and is subject to all limitations and conditions therein imposed (*Peterson* v. *Johnson*, 39 Cal.2d 745, 748 [249 P.2d 17]; *Sutter-Yuba Invest. Co.* v. *Waste*, 21 Cal.2d 781, 785 [136 P.2d 11]; *Quinn* v. *Kenney*, 47 Cal. 147, 150), if respondents are to be held duty-bound to respond to appellants' requests for separate valuation of their undivided interests, the source of this duty must be found in sections 4151, 4153 and 4154.

▆ On its face, section 4151, which speaks in terms of separate valuation of a "parcel" of tax-sold and tax-deeded property, appears to sanction separate valuation for the purpose of redemption of only a geographically-delineated portion of tax-sold or tax-deeded property. (See *Peterson* v. *Johnson, supra.*) While this is the construction of section 4151 which respondents claim to be the proper one, appellants urge that section 4151 also authorizes a separate valuation of an undivided interest in tax-sold or tax-deeded property. In

and recorded deed, purchase contract, deed of trust, mortgage, or final decree of court, in any parcel of tax-sold or tax-deeded property which does not have a separate valuation on the roll for the year for which it became tax delinquent or any subsequent roll, and who is not the owner or contract purchaser of the entire parcel as assessed, may apply to the redemption officer to have the parcel separately valued in order that it may be redeemed under this chapter.''

[3]These sections provide as follows: ''The redemption officer shall transmit the request for separate valuation to the county assessor and, if the tax collector is not the redemption officer, a copy of it to the tax collector.'' (§ 4153.)

''The assessor shall immediately place a separate valuation on the parcel for each year for which it was delinquent and not separately valued and transmit it to the redemption officer. The sum of the valuations of the parcels for each year shall equal their total valuation before separation for that year.'' (§ 4154.)

so urging, appellants rely heavily upon section 4146, which provides in pertinent part that the term ''parcel,'' as used in the chapter entitled ''Redemption of Part of Assessment,'' which chapter includes section 4151, ''includes an undivided interest in real property.'' We think that appellants' contention is sound. Not only does the wording of section 4151, when read in conjunction with the definition of the term ''parcel'' contained in section 4146, support appellants' position, but, in addition, the legislative history of sections 4146 and 4151 indicates that separate valuation and partial redemption of an undivided interest in tax-sold or tax-deeded property was intended by these sections.

The predecessor statute to sections 4146 and 4151, which were enacted in 1939, was Political Code section 3818.[4] As we read the pertinent language of this section it appears to have authorized separate valuation and partial redemption not only of lots, pieces or parcels of land, that is, geographically delineated portions, but also of undivided interests in separately assessed parcels of land. Moreover, while section 4151 is worded in language similar to the first of the paragraphs of former Political Code section 3818 quoted in footnote 4, which paragraph dealt with separate valuation and partial redemption of a lot, piece, or parcel of land which did not have a separate valuation on the assessment roll, we are of the opinion that section 4151 was intended to be a recodifica-

---

[4]Political Code section 3818, in pertinent part, read as follows: ''If such lot, piece or parcel of land does not have a separate valuation on the assessment roll, the auditor shall submit the description of the fractional part of the lot, piece or parcel of real property upon which redemption is requested, to the county assessor, who must place a valuation thereon. The auditor shall then estimate the amount of such taxes due on such lot, piece or parcel of land according to such relative or proportionate value and the taxes due on any improvements on the portion sought to be so redeemed, together with a relative proportion of the taxes due on personal property under such assessment, and of the taxes due each school, road, lesser or other taxation district; whereupon such redemption shall be made in the manner provided for in the preceding section; provided, that no lot, piece or parcel of land shall be segregated unless such piece or parcel of land has been transferred to a new owner by deed and such deed has been actually executed and delivered. A trust deed shall be considered a deed for the purposes outlined in this section.

''A partial rdemption may be made, in like manner, separately from the whole assessment, of an *undivided interest in any real property, if such property* has a separate valuation on the assessment roll; the auditor estimating the amount of taxes due on such undivided interest according to the proportion which *such interest in said property* bears to the whole assessment. The recorder shall note, on the margin of the record of the certificate of sale, a description of the property or undivided interest redeemed under this section, and shall specifically set forth the several amounts of taxes paid upon such redemption.'' [Italics added.]

tion not only of that portion of Political Code section 3818 but also of that portion of said statute dealing with the separate valuation and partial redemption of an undivided interest in a separately assessed parcel contained in the second paragraph of Political Code section 3818 which is set out in said footnote. This intention on the part of the Legislature was, we believe, manifested by the enactment of section 4146, which provides that the term "parcel" as used in section 4151 "includes an undivided interest in real property."

In support of their position respondents rely, in good part, upon an opinion of the Attorney General of this state. (37 Ops.Cal.Atty.Gen. 223.) ▆▆ [See fn. 5.] We have concluded, however, that the reasons advanced by the Attorney General which are supportive of respondents' position on the issue in question are not persuasive.[5] (For a criticism of the Attorney General's opinion see 50 Cal.L.Rev. 325-326.) In concluding that a joint tenant or tenant in common cannot obtain a separate valuation of his interest in tax-sold or tax-deeded property for the purpose of redeeming his interest, the Attorney General relies on the similarity of section 4151 to section 2803, which authorizes separate valuation for the purpose of paying current taxes.[6] Specifically the Attorney General concludes that since section 2803 does not [ ] [require] separate valuation of an undivided interest for the purpose of paying current taxes and since the language of section 4151 is similar to that of section 2803, such separate valuation is not [ ] [required] by section 4151 for the purposes of redeeming tax-sold or tax-deeded property.

[ ] [Even if it be conceded, without deciding, that the

---

[5]In reaching this conclusion we recognize that an administrative interpretation of a statute is to be accorded great respect by the courts. (*Rich* v. *State Board of Optometry*, 235 Cal.App.2d 591, 604 [45 Cal. Rptr. 512], and cases cited therein.) Nevertheless, the fact remains that the construction of a statute is a judicial rather than an administrative function. (*Rich* v. *State Board of Optometry, supra; Golden Gate Scenic Steamship Lines, Inc.* v. *Public Utilities Com.*, 57 Cal.2d 373, 377 [19 Cal.Rptr. 657, 369 P.2d 257].) Accordingly, in interpreting section 4151, this court is not bound to follow the interpretation placed on this statute by the Attorney General.

[6]Section 2803 provides as follows: "Any person showing evidence by presentation of a duly executed and recorded deed, purchase contract, deed of trust, mortgage, or final decree of court of an interest in any parcel of real property, except possessory interests, which does not have a separate valuation on the roll, and who is not the owner or contract purchaser of the entire parcel as assessed, may apply to the tax collector to have the parcel separately valued on the roll for the purpose of paying current taxes."

Attorney General is correct in concluding that section 2803 does not require separate valuation of an undivided interest for the purpose of paying current taxes,[7] his conclusion does not follow that because the language of section 4151 is similar to that contained in section 2803 the two sections are to be given the same interpretation. The opinion of the Attorney General overlooks section 4146, which provides that the term "parcel," as used in the chapter in relation to redemption of a part of an assessment, includes an undivided interest in real property. (See 50 Cal.L.Rev. 326.) Sections 4146 and 4151 are both found in the chapter on partial redemption, and read together make it clear that the Legislature intended that an undivided interest, whether or not entitled to separate valuation for the purpose of paying current taxes, was entitled to such valuation for the purpose of redemption.]

Further, we believe that the Attorney General's analysis of the legislative history of section 4151 is incorrect. This analysis is found in a letter written by the Attorney General as an amplification of his opinion concerning separate valuation and redemption of undivided interests. In this letter the Attorney General concludes that since former section 3818 of the Political Code did not permit "separate redemption of an undivided interest in a lot, piece or parcel of property which did not have a separate valuation on the roll," and since "the purpose of codification is to restate and not change the law," the Legislature's enactment of section 4146 must not be construed as an intention on its part "to permit a separate redemption pursuant to section 4151 of an undivided interest in property which did not have a separate valuation on the roll." This reasoning is fallacious and results, we believe, from a misreading of former section 3818 of the Political Code. That section did not limit the right to separate redemption of an undivided interest to situations where the undivided interest had a separate valuation on the assessment roll; rather it allowed such separate redemption of an undivided interest where *the property in which the undivided interest was claimed* had a separate valuation on the rolls. [*Ante,* fn. 4.] Accordingly, it is apparent that section 4151, which was based upon former section 3818 of the Political

---

[7]The predecessor of section 2803 was Political Code section 3747a, which authorized separate valuation on the assessment roll of "any lot, piece, parcel or fractional part of land. . . ." Unlike former Political Code section 3818, however, Political Code section 3747a did not contain any provision relating to separate valuation of an undivided interest.

Code and which, when read in conjunction with section 4146, authorizes separate valuation of undivided interests even though no separate valuation had previously been made of such undivided interests,[8] does in substance restate rather than change the law which existed prior to its enactment, namely, section 3818 of the Political Code.

█ Respondents next argue that the Legislature, by adding to section 4151 the words "and who is not the owner or contract purchaser of the entire parcel as assessed" adopted a definition of the term "parcel" which is not necessarily the same as the earlier definition contained in section 4146.[9] Thus, respondents contend that as a result of this amendment to section 4151, the parcel which an applicant would be entitled to have separately valued is "the parcel as assessed." This is an incorrect interpretation of section 4151. The language "parcel as assessed" in that section refers to the *entire parcel which has been assessed* and concerning which an interest therein is sought to be separately assessed. The interpretation sought by respondents would render section 4151 meaningless since a parcel which was assessed would of necessity have been valued and thus there would be no necessity for such a parcel to be separately valued under that section in order to be redeemed. Accordingly, we think it obvious that section 4151 was intended to authorize separate valuation of a parcel which was included in a larger parcel that had been assessed as a unit and subsequently tax-sold or tax-deeded.

With regard to the meaning of the language "and who is not the owner or contract purchaser of the entire parcel assessed," it is clear that this language, when read in context, merely precludes separate valuation of a portion of tax-sold or tax-deeded property in a situation where the portion for which separate valuation is sought is a part of a parcel which has been separately assessed and which is owned in its entirety by the person seeking separate valuation of the smaller portion. Apropos the meaning of this language,

---

[8]If, in fact, an undivided interest has been separately valued on the assessment rolls, partial redemption of this undivided interest is specifically provided for by section 4147. That section, as to which the definition of "parcel" contained in section 4146 applies, provided as follows: "As provided in this chapter, any parcel of tax-sold property, or of tax-deeded property to which the right of redemption has not been terminated, contained in an assessment and having a separate valuation on the roll for the year for which it became tax delinquent and all subsequent years may be redeemed separately from the whole assessment."

[9]This language was added to section 4151 in 1949.

however, respondents advance the same argument as contained in the Attorney General's opinion that a person claiming an undivided interest in tax-sold or tax-deeded property would not be entitled to separate valuation of his interest because he does not meet the test of being a person ''who is not the owner or contract purchaser of the entire parcel as assessed.'' The thesis of this argument is that the owner of an undivided interest in real property is the owner of the whole parcel of tax-sold or tax-deeded property along with his cotenants. This argument is untenable. It seems clear to us that the phrase ''the owner . . . of the entire parcel as assessed'' means the person who owns the sum total of all property interests in the assessed parcel. Accordingly, a person who owns an undivided interest in the property is not such an owner of all the undivided parts of the parcel.

Another contention made by respondents is that because the payment of property taxes by one cotenant inures to the benefit of the remaining cotenants and discharges the tax lien against the entire parcel as assessed (*Willmon* v. *Koyer*, 168 Cal. 369, 374 [143 P. 694, L.R.A. 1915B 961]; *Conley* v. *Sharpe*, 58 Cal.App.2d 145, 155-156 [136 P.2d 376]), if appellants, as owners of undivided interests in tax-sold or tax-deeded property, paid that portion of the delinquent taxes which their respective interests in the property bore to the entire property, these payments would have to be credited to the benefit of all the cotenants. The cases upon which respondents rely for the principle that the payment of taxes by one cotenant inures to the benefit of the remaining cotenants all involve situations where the property which is owned by several persons as cotenants is assessed as a unit. This rule does not apply when the interest of a cotenant has been separately valued and assessed. In such a case taxes paid by a cotenant do not apply to the entire property but merely to the cotenant's separately valued and assessed interest. (§§ 2801, 2802; see *Wilson* v. *Sanger* (N.Y.) 57 App.Div. 323 [68 N.Y.S. 124]; *In re Lohr's Estate*, 132 Pa.Super. 125 [200 A. 135]; *Collins* v. *Emerick*, 94 F.Supp. 245; 86 C.J.S., Tenancy in Common, § 68, subd. e, p. 454.) Upon analogy it follows that when a cotenant's interest in tax-deeded or tax-sold property has been separately valued for purposes of redemption pursuant to the provisions of sections 4147 and 4151, the payment of a portion of the delinquent taxes by that cotenant would inure only to the benefit of his proportionate interest in the tax-sold or tax-deeded property and would

entitle him to redeem his undivided interest in the property. ██ Reference is also made to the administrative difficulties which would arise if separate valuation and partial redemption of undivided interests were allowed. Such matters are properly addressed to the Legislature and not to the courts whose function it is to construe statutes and not to determine the wisdom of their enactment. ██ We hasten to point out, with respect to public policy, that "It is the settled policy of the law 'to give a delinquent taxpayer every reasonable opportunity compatible with the rights of the state to redeem his property, to make his burden as light as possible' and to return the tax-deeded property to the rolls for the further governmental support. (*People* v. *Gustafson,* 53 Cal. App.2d 230, 234 [127 P.2d 627].)'' (*Hossom* v. *City of Long Beach,* 83 Cal.App.2d 745, 749 [189 P.2d 787]; see also *Dougery* v. *Bettencourt,* 214 Cal. 455, 462 [6 P.2d 499].) Moreover, we note that a number of other jurisdictions, by statute, allow separate valuation and partial redemption of undivided interests in tax-sold or tax-deeded property. (See *Christian Business Men's Committee* v. *State,* 228 Minn. 549 [38 N.W.2d 803]; *Hanley* v. *Federal Mining & Smelting Co.,* 235 F. 769, 775; *Mifflin Township* v. *Macey,* 136 Pa.Super. 463 [7 A.2d 509]; *Sailer* v. *Mercer County,* 75 N.D. 123 [26 N.W.2d 137]; *Smith* v. *United States,* 135 F.Supp. 694, 695; *Tintic Undine Mining Co.* v. *Ercanbrack,* 93 Utah 561 [74 P.2d 1184].)

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., and Sullivan, J., concurred.

MOSK, J.—I concur, although I am concerned about the administrative burden which the result may impose on county assessing agencies and redemption officers, particularly in metropolitan areas. There is cited in 37 Ops.Cal.Atty.Gen. 223 an example of an owner of a 17/8345 interest in real property seeking a separate assessment thereon. Under our opinion in the instant case, the defaulting taxpayer of that minute interest can compel separate assessment in order to assert a right of redemption.

Nevertheless, the analysis of Justice Molinari, adopted by this court, is persuasive. If the spectre of ministerial burden becomes real and intolerable, county assessors will undoubtedly address their grievance to the Legislature.

The Attorney General's opinion upon which defendants

rely was rendered in 1961, during my tenure as the Attorney General of California. (37 Ops.Cal.Atty.Gen. 223; see discussion in 50 Cal.L.Rev. 299, 324-328 (1962).) In concurring with my judicial colleagues, I thus find myself in the identical predicament of Mr. Justice Jackson in *McGrath* v. *Kristensen* (1950) 340 U.S. 162, 176 [95 L.Ed. 173, 184, 71 S.Ct. 224]. Ten years before, as Attorney General of the United States, he had rendered an opinion contrary to the conclusion reached as a justice of the United States Supreme Court. Justice Jackson offered an apologia which I adopt, in part, as my own:

''I concur in the judgment and opinion of the Court. But since it is contrary to an opinion which, as Attorney General, I rendered in 1940, I owe some word of explanation. 39 Op.Atty.Gen. 504. I am entitled to say of that opinion what any discriminating reader must think of it—that it was as foggy as the statute the Attorney General was asked to interpret. . . . Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others. See Chief Justice Taney, *License Cases,* 5 How. (U.S.) 504 [12 L.Ed. 256], recanting views he had pressed upon the Court as Attorney General of Maryland in *Brown* v. *Maryland,* 12 Wheat. (U.S.) 419 [6 L.Ed. 678]. Baron Bramwell extricated himself from a somewhat similar embarrassment by saying, 'The matter does not appear to me now as it appears to have appeared to me then.' *Andrews* v. *Styrap* (Eng.) 26 L.T.N.S. 704, 706. And Mr. Justice Story, accounting for his contradiction of his own former opinion, quite properly put the matter: 'My own error, however, can furnish no ground for its being adopted by this Court. . . .' *United States* v. *Gooding,* 12 Wheat. (U.S.) 460, 478 [6 L.Ed. 693, 609]. Perhaps Dr. Johnson really went to the heart of the matter when he explained a blunder in his dictionary—'Ignorance, sir, ignorance.' But an escape less self-depreciating was taken by Lord Westbury, who, it is said, rebuffed a barrister's reliance upon an earlier opinion of his Lordship: 'I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion.' If there are other ways of gracefully and good naturedly surrendering former views to a better considered position, I invoke them all.''

I also find appropriate the quotation employed by Mr. Justice Rutledge in *Wolf* v. *Colorado* (1949) 338 U.S. 25, 47 [93 L.Ed. 1782, 1795, 69 S.Ct. 1359]: ''Wisdom too often never comes, and so one ought not to reject it merely because it comes late.''