[Civ. No. 32152. Second Dist., Div. One. July 30, 1968.]

MILLBROOK FARM, Plaintiff and Appellant, v. PHILLIP E. WATSON, as County Assesor, etc., Defendant and Respondent.

Neil Dillon McCarthy for Plaintiff and Appellant.

John D. Maharg, County Counsel, and Alfred Charles DeFlon, Deputy County Counsel, for Defendant and Respondent.

LILLIE, J.—As of the first Monday of March 1966, approximately 535 acres of plaintiff's land, situated in an unsubdivided rural area and mostly unimproved, were assessed by defendant for tax purposes in two parcels. Upon

refusal of defendant to assess plaintiff's property in nine parcels, as requested and as it claims has been done by defendant and his predecessors for more than 40 years, plaintiff brought this action in mandamus to compel an assessment of such property in nine different parcels, separately assessed. From a judgment denying relief plaintiff appeals.

The record has reached this court by way of an agreed statement (rule 6, Cal. Rules of Court) which declares, among other things, that all of the facts found by the trial court are true. Relevant here are the following factual determinations: All of the subject land, referred to as that "located in section 15 and that located in section 16," is contiguous;[1] it lies without the boundaries of any incorporated city (but within the boundaries of Los Angeles County) and no portion thereof is situated either within different school districts or within different revenue districts no part thereof is subdivided into lots, different portions of each section have varying terrain and unit values; and except for periodic visits by plaintiff's president and his family, the property, on all dates here material, was wholly unused.

The court also found that plaintiff, as alleged in its petition, unavailingly requested defendant to divide the property for assessment purposes into nine different parts. In this connection the court made certain findings as to the policy and practice of defendant's office as of the first Monday in March 1966, and thereafter, which is presented in the agreed statement as follows: While it was such policy and practice with respect to the assessment of rural properties to assess by one single assessment all contiguous lands located within a single section and held in one single or common ownership where such could be effected without violating the law (Rev. & Tax. Code, §§ 603-606), "The assessor did not in making said 1966 assessments completely effectuate said policy and practice in that he did in two different cases assess by two separate assessments, contiguous tracts of land wholly located within a single section and held in a single and common ownership. In each case said properties were located in the immediate vicinity of the subject property."

In light of the above factual setting, and as agreed by the parties, the following issue is for our determination: "Must the local assessor, when requested by the owner, divide

---

[1]The property in section 15 was assessed at $66,150, of which $3,650 was for improvements; the land in section 16 was assessed at $61,000, no improvements thereon (if any) being assessed.

such property into such segments as are designated by the owner and then assess each segment separately?" In support of an affirmative answer to this query, plaintiff has developed the following thesis: There is no statutory definition respecting the minimum assessable unit (sizewise) of real property although, for assessment purposes, it is provided that city lots may be described by naming the city and giving the number of the lot and block (Rev. & Tax. Code, § 324) and no more than 640 acres may be included in a single parcel (Rev. & Tax. Code, § 328); since the owner is directed to file a written property statement with the assessor at the appointed time (Rev. & Tax. Code, § 441 et seq.), the property so listed, by segments or otherwise, should be binding upon the assessor particularly in light of the penalties incurable upon failure to pay taxes prior to the end of a fiscal year—thus, an owner is precluded from redeeming only a portion of his property (*Smith* v. *Anderson,* 67 Cal.2d 635 [63 Cal.Rptr. 391, 433 P.2d 183]; accordingly, since tax law should be strictly construed in favor of the taxpayer (*Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603, 608 [76 P.2d 97]), and in view of the declaration that all men are possessed of certain rights, including that of *protecting* their property (Cal. Const., art. I, § 1), plaintiff (if it desires) need only be assessed for those portions of its property which it does not wish to become tax delinquent. For the following reasons we think that such argument, while rather ingenuous, cannot be sustained.

Our constitution states that "All property in the State except as otherwise in this Constitution provided, not exempt . . . shall be taxed in proportion to its value, to be ascertained as provided by law." (Cal. Const., art. XIII, § 1); additionally, "property" is declared to include various types of personalty (therein listed) "and all other matters and things, real, personal, and mixed, capable of private ownership. . . ." While no declaration is made of any minimum assessable land unit, the taxing power emanating in section 1 is implemented by section 13 which declares that "The Legislature shall pass all laws necessary to carry out the provisions of this article." Pursuant thereto, the Legislature thereafter adopted the Revenue and Taxation Code which variously specifies the segments in which land assessments shall be made.[2] Contrary to plaintiff's contention, and despite the

[2] In section 602, subdivision (j) the segment is referred to as "each piece of property"; section 606 uses the word "tract," and in section 608 the term "parcel" is found.

failure of the Legislature to be more explicit, it nowhere appears that the power to determine the minimum unit under consideration is other than in the Legislature which, in turn, has delegated to the appropriate assessor the responsibility of executing its enactments. ■ Too, unless the contrary is clearly apparent from the record, there is a presumption that the assessment was regularly and correctly made. (*Utah Constr. Co.* v. *Richardson*, 187 Cal. 649 [203 P. 401].)

In aid of the above presumption of regularity is the governing decisional law, in this state and elsewhere. As a general proposition it has been stated that where lots or lands (as here) are contiguous and in one ownership they may be assessed as a unit (Annot. 133 A.L.R. 524, 538). Cited in the annotation for such proposition are four California cases: *People* v. *Morse,* 43 Cal. 534; *People* v. *Culverwell,* 44 Cal. 620; *Cooper* v. *Miller,* 113 Cal. 238 [45 P. 325]; and *Houghton* v. *Kern Valley Bank,* 157 Cal. 289 [107 P. 113].[3] Of particular interest is the *Houghton* case which makes reference to *Terrill* v. *Groves,* 18 Cal. 149, also cited in the annotation for the principle that where the parcels are noncontiguous, they should be separately assessed: ''There may, no doubt, be conditions under which a joint assessment of separate lots would be improper, as, for example, where the lots are not contiguous, or improvements on one are charged against all (*Terrill* v. *Groves,* 18 Cal. 149), but no such conditions appear here.'' (157 Cal. 289, 294.) The *Houghton* case is further significant since it involved city lots and, as pointed out earlier, it is provided that such property may be described by the number of the lot and block (Rev. & Tax. Code, § 324) and, *arguendo,* must be so assessed. ■ It seems settled that in order to impart validity to the acts of an assessor the provisions of the statute should be strictly followed and observed with particularity (*Estate of Potter,* 188 Cal. 55, 64 [204 P. 826]); in our case, however, there is no specific statute defining the assessor's powers, although provision is made in other situations for dividing parts of a single tract of property (§ 603 [property partly within and without a city];

---

[3]In accord are decisions from a dozen or more jurisdictions. One of the latest appellate pronouncements on the subject is that of the Pennsylvania Supreme Court in *In re Tax Sale of Real Estate of Bolen* (1958) 393 Pa. 377 [143 A.2d 339, 340-341]: ''Where separate but contiguous pieces of land are improved and used as one tract, such as here, it is proper and not at all uncommon for the assessment to be made as one piece, and thereafter be so carried on the tax records. In fact, to do otherwise would serve no purpose and would be neither sensible nor practical.''

§ 606 [parcels lying in different revenue districts]; § 604 [parcels lying within and without a school district]). Accordingly, unless there is another ground for the relief sought, it must be held that plaintiff's challenge to the assessment is without legal or other support. In so concluding it should be emphasized that plaintiff is not here attacking the amount of the assessment which presumably meets the requirement that the land be taxed in proportion to its value (Cal. Const., art. XIII, § 1), nor could it do so until its application for a reduction of the assessment valuations, heretofore filed with the appropriate tax appeals board, has been acted upon.

 The additional ground for the relief sought is a constitutional one; it is contended that by refusing to assess plaintiff's property in the manner requested while at the same time assessing nearby property, likewise contiguous and held in a single ownership, in separate parcels, defendant denied plaintiff the equal protection of the laws.[4] (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 11, 21.) It is settled that while the equal protection clause was intended to secure equality and uniformity in the mode and rate of assessment and taxation, the constitutional guarantee is not violated unless there be a showing that the action of the tax officials was more than mere error or mistake in judgment—for example, that they are chargeable with a purpose or design to discriminate by a systematic method. (16A C.J.S., Constitutional Law, § 522.5 Thus, ''An unequal tax assessment cannot be held in violation of the Fourteenth Amendment where the purpose of the assessing board to discriminate is not clearly established and where discrimination may be attributed to an honest mistake of judgment and lack of time and evidence for making general reevaluations when objection was made. [Citations.]'' (*Crothers* v. *County of Santa Cruz*, 151 Cal.App.2d 219, 227 [311 P.2d 557].) In the instant case the agreed statement merely declares that defendant did not completely effectuate his policy of assessing under one single assessment property identical to that in suit; there is no evidence that he intentionally afforded plaintiff treatment different from that afforded other property owners. Clearly this does not meet the test pointed out in *Snowden* v. *Hughes*, 321 U.S. 1 [88 L.Ed. 497, 64 S.Ct. 397]. ''It is

---

[4] Plaintiff is not complaining that its single parcel was assessed in two parts; instead, it complains that it should have been assessed in more than two parts.

not enough to establish a denial of equal protection that some are assessed at a higher valuation than others. The difference must be due to a purposeful discrimination, which may be evidenced, for example, by a systematic under-valuation of the property of some taxpayers and a systematic over-valuation of the property of others, so that the practical effect of the official breach of law is the same as though the discrimination were incorporated in and proclaimed by the statute.'' (321 U.S. 1, 9 [88 L.Ed. 497, 503].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 26, 1968, and appellant's petition for a hearing by the Supreme Court was denied September 25, 1968. Mosk, J., was of the opinion that the petition should be granted.