Opinion
 

 COLOGNE, J.
 

 William R. Herrington and his wife Georgia May Herrington sued in superior court to quiet title to certain real property owned by them and lost at a tax sale for nonpayment of the secured property taxes. The action seeks to invalidate the tax deed of the State of California to William E. Weigel, purchaser at the tax sale.
 

 The Herringtons owned an undivided one-half interest in the property as joint tenants. Mrs. Herrington owned the other undivided one-half as a tenant in common, having acquired it by way of inheritance. The Herringtons had owned the property for a number of years before the time of the tax sale and it was unencumbered. Mr. Herrington gave his wife the money for the taxes each year but for the three years 1966-1967 through 1968-1969 she spent the money for other purposes and did not tell him. She said she was afraid to tell him. The taxes assessed against the property for the three fiscal years were not paid. The property was “sold” to the State of California on June 30, 1967, pursuant to Revenue and Taxation Code sections 3351-3353.
 
 [1]
 

 
 *680
 
 The Herringtons paid the 1969-1970 and all later taxes when due. The tax collector received and credited to the Herringtons’ account $200 on November 18, 1970; $204.46 on April 9, 1971; $250 on December 1, 1971, $238.10 on the same date; and $480.52 on December 5, 1972.
 

 The San Diego County Tax Collector sent by certified mail a single envelope containing the notice of intent to deed as prescribed by section 3365
 
 [2]
 
 addressed to “William R. and Georgia May Herrington and Mrs. Russell Herrington” at the address shown on the tax rolls. This was the only notice of intent to deed to the state. Mrs. Herrington signed a receipt for the notice, read it and threw it away without informing Mr. Herrington.
 

 On July 3, 1972, the County of San Diego deeded the property to the State of California. On December 5, 1972, plaintiffs sent a check for $480.52 which was the amount of the total tax bill for the fiscal year 1972-1973 and the county accepted that payment. Notice of intent to sell tax deeded property as required by section 3701 was sent out in the same manner and as in the case of the notice of intent to deed, i.e., only one notice was sent in a single envelope to the Herringtons at the address shown on the assessment rolls.
 

 The trial court found it is the long-standing practice of the San Diego County Tax Collector to send separate notices required for both sections 3365 and 3701 proceedings where there are undivided interests and the addressees for each interest are shown on the assessment rolls. A single notice of intent to sell was sent in each case here. Before the actual sale by the state a representative of the county tax collector personally called
 
 *681
 
 upon Mrs. Herrington and explained the property was going to be sold and she assured him a redemption would be effected before the sale. Shortly before the sale he called her on the telephone to remind her again of the impending sale. There was no payment made on these taxes.
 

 Mr. Herrington never received actual notice of the intent to deed the property to the State of California and had no personal knowledge of the deed until February 10, 1973. Neither the County of San Diego nor the State of California made direct contact with Mr. Herrington during the course of the tax sale process. All their contacts were with Mrs. Herrington, on the telephone and in person, at the residence shown on the rolls. During all times between December 1966 and February 9, 1973, Mrs. Herrington, although emotionally upset, was mentally competent to deal with the subject of the real property taxes and had a full understanding of her rights. She had no guardian.
 

 On February 8, 1973, the San Diego County Tax Collector acting as agent for the state sold the property at public auction to the defendant William E. Weigel for $13,100 and on the same day executed a deed from the State of California to the defendant William E. Weigel as authorized by law. The correct amount of taxes, penalties and costs due on the property is not in dispute.
 

 The market value of the property is $40,000.
 

 The trial court held the notice of intent to deed to the state did not comply with sections 3365 or 3701 because separate notices were not mailed to each last addressee. It further held the requirements of due process of law were not met because William R. Herrington was not given actual or personal knowledge of the proposed tax sale, he was not mailed a separate notice of intent to deed to the state or of the intent to sell by the state. The trial court further held that under the peculiar facts of this case the tax payments received by the tax collector after the July 3, 1972, tax deed date could and should have been applied to the earlier tax delinquencies rather than the current taxes and the sale by the State of California should not have been made. The trial court determined the amount of tax due with penalties, interest and costs and by interlocutory decree authorized the Herringtons to reimburse Weigel for that sum and pay the county all other sums due for other delinquent taxes and pay any taxes which might thereafter be due, and then the Herringtons would be
 
 *682
 
 entitled to a final decree quieting title in their name; otherwise, title would be quieted in Weigel’s name.
 
 [3]
 

 At the outset we should state the Tax Collector of San Diego County assiduously complied with all notice requirements. In fact he went further than the law requires and sent a representative to call on Mrs. Herrington to advise her personally of the impending sale.
 
 [4]
 
 Additionally, he telephoned her the day before the sale to be sure she was fully aware of the sale.
 

 Notices of intention to deed to the state must be given as provided by section 3365. Section 3365 provides in pertinent part as follows: “. . . the tax collector shall send by registered mail to the last assessee of the tax-sold property at his last known address either a copy of the publication or a notice of intent to deed the property to the state.” (See fn. 2,
 
 ante,
 
 for full text of § 3365.) Notice of intention to sell at public auction by the state must be given as provided in section 3701. Section 3701 provides in pertinent part as follows: “. . . the tax collector shall send a notice by registered mail of the intended sale to the last assessee of each portion of the property at his last known address.”
 

 Under the code the singular includes the plural so that the “assessees” must be sent “a copy” or “copies.” (§§ 13, 23.) There is no requirement in the code that “each” assessee be sent a
 
 separate
 
 copy or copies. The assessees have some duty to designate how they want their names to appear on the tax rolls (see §§ 602, 610, 619.1;
 
 Froehlich
 
 v.
 
 Board of Directors,
 
 35 Cal.App.3d 98, 103 [110 Cal.Rptr. 456]). The address shown on the tax rolls is the last known address
 
 (Campbell
 
 v.
 
 Moran,
 
 161 Cal. 325, 328 [119 P. 89]). The code provides a method whereby a property owner holding an undivided interest may request a separate assessment (§ 2801 et seq.). In such a case separate assessment would appear on the assessment roll and separate notices would be appropriate.
 
 [5]
 
 Here,
 
 *683
 
 although the deed revealed Mrs. Herrington had an undivided interest, there is no evidence a request was ever made by either of them to separate the interests on the assessment roll.
 

 Tax assessors generally assess property held in joint tenancy and tenancy in common to all the tenants as a group (Ehrman & Flavin, Taxing Cal. Property, § 201, p. 176). The delinquent roll is made up from that portion of the assessment roll containing secured properties upon which the taxes have not been paid after the second half of the taxes are delinquent (§ 2624). It is appropriate the data on these rolls, especially with regard to the address of the assessees, should conform.
 

 It is particularly significant the Legislature did not call for separate notices where there was not separate billing. It would be unreasonable for the law to call for mailed notices to be given in any manner except in conformity with the manner provided for mailing tax statements. To suggest the county should use one method of giving of mailed notice of the taxpayer’s obligation to pay and a different method for mailing notice of the consequences of his failure to pay makes no sense.
 

 We are satisfied the mailing of separate notices under the circumstances of this case was not required.
 

 In any event, it should be noted the notice by registered mail required by section 3701 is, in the absence of actual fraud, conclusively presumed regular in all respects when the deed to the purchaser at the public auction has been issued (§ 3711).
 
 [6]
 
 The only prerequisite is a valid deed to the state
 
 (Litchfield
 
 v.
 
 County of Marin,
 
 83 Cal.App.2d 730 [189 P.2d 750];
 
 DeFlon
 
 v.
 
 Van Lue,
 
 83 Cal.App.2d 288 [188 P.2d 301]). The deed to the state, proved in this case, is prima facie evidence of certain
 
 *684
 
 matters (§ 3517)
 
 [7]
 
 and conclusive evidence of all others (§ 3518).
 
 [8]
 
 The notice by registered mail required by section 3365 is not listed among those factors for which the presumption would be rebuttable. The issuance of the deed to the state clearly provides a conclusive presumption that notice has been regularly given.
 
 [9]
 
 In the instant case any irregularity in mailing the notice has been overcome by the issuance of the deed to the state.
 

 The deed to the state, however, provides only prima facie evidence that the taxes were not paid (§ 3517, subd. (d)) and that there has not been a redemption (§ 3517, subd. (f)). In this case there is evidence of irregularities as far as payment and redemption are concerned. This puts in issue the validity of the deed from the tax collector to the state in those respects and as a consequence also the deed to Weigel
 
 (Litchfield
 
 v.
 
 County of Marin, supra,
 
 83 Cal.App.2d 730). Of concern to us is the acceptance of current taxes when a delinquency remains for previous years.
 

 The law provides a particular method of paying taxes (§§ 2605-2608), or as specified in the alternative provision for collection of taxes in installments provided for in chapters 2.1 or 2.2, part 5, division 1 (§§ 2700-2707; §§ 2750-2771). A tendered partial payment or underpayment does not satisfy the requirements of the code and should be returned together with a statement of the current amount due together
 
 *685
 
 with the reason for returning the remittance.
 
 [10]
 
 If the county has adopted the alternate method for distribution of tax levies provided in chapter 3, part 8, division 1, beginning at section 4701 et seq. and particularly section 4717, the tax collector is required to put the money in trust and notify the taxpayer.
 

 Until January 1, 1976, section 2607 read: “The entire tax on real property may be paid when the first installment is due. The second installment may be paid separately only if the first installment has been paid. Unless accompanied by the payment of the second installment, payment of the first installment shall not be accepted after the second installment has become delinquent.”
 
 [11]
 
 This, of course, applies only to installments but the concept of paying delinquent taxes before current taxes can be paid is clear. The language of section 4717, the alternative procedure, clearly applies not only to installments but to taxes due for later years. It reads in part:
 

 “If a tax payment which is insufficient to cover the amount of taxes due and payable is received by the tax collector of a county that has elected to follow the procedure authorized by this chapter, the tax collector shall place the tax payment in a trust fund and immediately notify the taxpayer of the deficiency.
 

 “In the case of a deficiency in the payment of secured taxes, the taxpayer may pay the balance due until the date on which the property is sold to the State by operation of law. If payment of the balance due is not received on or before the sale date, the insufficient payment shall be returned to the taxpayer, and sale to the State shall be made in the usual manner as provided in this code.”
 

 It is apparent the Legislature does not intend the tax collector to accept anything less than the full amount of taxes due. Authorization is given to hold those proffered, less than full payment, in trust but not accept them in payment of current taxes when a deficiency exists.
 

 
 *686
 
 The legislative design clearly envisions avoidance of complicated bookkeeping procedures and questionable “partial defaults” which would follow if the tax collector was authorized to receive part payment of the amount due for taxes.
 

 The Revenue and Taxation Code provides a single method of redeeming property sold to the state for delinquent taxes (ch. 1, pt. 7 of div. 1, beginning at § 4101, and ch. 3, beginning at § 4186). Redemption is normally effected by payment of delinquent taxes, penalties, costs and fees (§ 4102). Redemption through installment payments is authorized by the code (§ 4216 et seq.; §§ 4219-4221). Payment of delinquent taxes may be made in full or as stated in section 4219 which reads as follows; “Election to pay delinquent taxes in installments is made by payment, in the same manner as a redemption, of 20 percent, or more, of the redemption amount. All current taxes, with penalties thereon, due or coming due in the fiscal year in which this first payment is made shall be paid before the delinquency date of the last installment of current taxes, except that if the election to pay delinquent taxes in installments is made on or after the delinquency date of the last installment of current taxes in any fiscal year, the current taxes, with penalties and costs thereon, shall be paid with or prior to the installment payment.” A redemption may only be made by following the specific provision governing redemption set forth by statute. In
 
 Peterson
 
 v.
 
 Johnson,
 
 39 Cal.2d 745, 748 [249 P.2d 17], the court said; “If the property is thereafter sold to the state for nonpayment of the tax, it can be redeemed only upon the terms prescribed by the Legislature. ‘There is no constitutional right to redeem property that has been sold to the state for the nonpayment of taxes. “The right of redemption comes entirely from the statute, and is subject to all the limitations and conditions therein imposed.” [Citation.]’ [Citation.]”
 
 (Peterson
 
 v.
 
 Johnson, supra,
 
 39 Cal.2d at p. 748.) Though redemption statutes may be liberally construed, they cannot be disregarded
 
 (Krassner
 
 v.
 
 Veneman,
 
 206 Cal.App.2d 299, 306 [23 Cal.Rptr. 673]). The code authorizes no other method of redemption, yet here the Herringtons were allowed to pay current taxes without making any arrangement for the delinquent taxes. The payments made by the taxpayer cannot, at law, be deemed any sort of a redemption, since their actions did not conform to the provisions in the code. When the tax collector accepts the proffered payment of current taxes without question, however, he is very clearly participating in a redemption program contrary to law and contrary to equity. The tax collector’s error should not, in equity, be used to aid the forfeiture, working against the interests of property taxpayers such as the Herringtons.
 

 
 *687
 
 The tax collector erred in accepting taxes here for current taxes when a delinquency for previous years’ tax existed. The interests of the taxpayer which the Legislature sought to preserve are protected when his payment can only be accepted for the current taxes if delinquent taxes are paid or a program of redemption is worked out. Under these circumstances the taxpayer has full knowledge of his obligation and is not induced to keep paying the tax collector when the threat of confiscation lies hidden in the legal tangle of a five-year old default. The legislative design calls for a specific awareness of the default, a payment of both current and delinquent taxes over a minimum period of time and the absence of a lump-sum payoff which otherwise would be required at the end of the five years. These are considerations based on reason and properly within the province of the Legislature to establish.
 

 Quiet title actions lie in equity and equitable principles apply
 
 (Talbot
 
 v.
 
 Gadia,
 
 123 Cal.App.2d 712, 720 [267 P.2d 436]). Equity looks with disfavor on forfeiture and will do equity where full compensation can be effected (see 7 Witkin, Summary of Cal. Law, Equity, pp. 5243-5246). “. . . ‘a court of equity will never, by its affirmative action, or by the affirmative provisions of its decree, enforce a penalty or forfeiture, or any stipulation of that nature ....’”
 
 (Ebbert
 
 v.
 
 Mercantile Trust Co.,
 
 213 Cal. 496, 500 [2 P.2d 776].)
 
 [12]
 

 Here the equities weigh heavily in favor of the Herringtons who stand to lose a lifetime of effort. Equity will not allow the county or the state to accept current taxes knowing a delinquency exists which could cause the taxpayer to lose both current taxes and his land.
 
 [13]
 
 The county and the state must work out a program to avoid such inequities, not contribute to the problem.
 

 
 *688
 
 Weigel can be and was made whole by the decree. All taxes, interest and penalties to the county have been paid so the taxing authorities are not made to suffer. Under the circumstances of this case the trial court’s application of equitable principles to reach a fair conclusion in this case, obviating the forfeiture, was proper.
 

 Judgment affirmed.
 

 Brown (Gerald), P. J., and Staniforth, J., concurred.
 

 [1]
 

 All citations are in reference to the Revenue and Taxation Code unless otherwise indicated.
 

 [2]
 

 Section 3365 reads as follows:
 

 “After the first publication of the notice of intent to deed to the state and hot less than 21 nor more than 35 days before the'date of deeding, when tax-sold property is to be deeded, the tax collector shall send by registered mail to the last assessee of the tax-sold property at his last known address either a copy of the publication or a notice of intent to deed the property to the state. The tax collector shall make a reasonable effort to ascertain the address of the last assessee of the tax-sold property, including, but not limited to, an examination of the assessment of this property on the rolls beginning with the year of delinquency to and including that of the last equalized roll, an examination of the most recent telephone books in the county in which the tax-sold property is located, and an examination of the telephone book covering the area of the last known address of the last assessee.
 

 “The failure of the tax collector to make a reasonable effort to ascertain the address of the last assessee as required by this section shall not affect the validity of the deed to the state.”
 

 [3]
 

 The court specifically found certain property descriptions in the mailed and published notices, differing from the descriptions in the deed, were not misleading and did not adversely affect anyone. That is not an issue before us.
 

 [4]
 

 If we had any criticism of the procedures followed, it would be that with only slightly more effort all the taxpayers (both Mr. and Mrs. Herrington) could have been given actual notice. Where the value of the property is so disproportionate to the amount of tax due it should have been apparent something was wrong and the small extra effort might have reversed the equities and avoided the headaches this case has presented.
 

 [5]
 

 The court made the following finding: “The long standing, consistent administrative practice of the San Diego County Tax Collector has been that when undivided interests and the addresses for each interest are shown on the assessment roll, separate notices are sent under Section 3365 [& § 3701], to the holder of each such undivided interest;
 
 *683
 
 otherwise only one notice is sent.” The testimony of Gilbert William Gillen of the tax collector’s office affirms the notices in this case were sent
 
 in conformity with the tax collector’s policy.
 
 His later testimony which presumedly supports the finding was to the effect separate notices would be sent where undivided interests in the property were separately billed. The assessment of taxes on this property was not separately billed so separate notices were not called for. This conforms his testimony and states what we perceive to be the proper method of giving notice.
 

 [6]
 

 Section 3711 reads as follows: “Except as against actual fraud, the deed duly acknowledged or proved is conclusive evidence of the regularity of all proceedings from the assessment of the assessor to the execution of the deed, both inclusive.”
 

 [7]
 

 Section 3517 reads as follows: “The deed, duly acknowledged or proved, is prima facie evidence that:
 

 “(a) The property was assessed as required by law.
 

 “(b) The property was equalized as required by law.
 

 “(c) The taxes were levied in accordance with law.
 

 “(d) The taxes were not paid.
 

 “(e) At a proper time and place the property was sold as prescribed by law.
 

 “(f) The property was not redeemed.
 

 “(g) The person who executed the deed was the proper officer.
 

 “(h) That the amount for which the property was sold was legally a lien on the real property.”
 

 [8]
 

 Section 3518 reads as follows: “The deed, duly acknowledged or proved, is conclusive evidence, except against actual fraud, of the regularity of all other proceedings from the assessment of the assessor to the execution of the deed, both inclusive.”
 

 [9]
 

 In
 
 Philbrick
 
 v.
 
 Huff,
 
 60 Cal.App.3d 633 [131 Cal.Rptr. 733] the court draws the distinction between the notice required to be given by registered mail, which is not required by the due process requirements, and notice by publication, which provides the constitutional requisite. There is no dispute here, publication was effected in the manner prescribed by law meeting the test of due process.
 

 [10]
 

 See 55 Ops.Cal.Atty.Gen. 247.
 

 [11]
 

 In 1975 the section was amended to read as follows: “The entire tax on real property may be paid when the first installment is due. The first installment may be paid separately when the first installment is due or at any time thereafter until the properties on the current roll are sold to the state. The second installment may be paid separately only if the first installment has been paid.”
 

 This change would appear to conform the language of this procedure with that of section 4717.
 

 [12]
 

 The nature of the forfeiture here is in many respects identical to the forfeiture involved in cases of breaches of real property purchase or security contracts such as that involved in the
 
 Ebbert
 
 case,
 
 supra.
 
 In such cases it has been said: “[W]hen the default has not been serious and the vendee is willing and able to continue with his performance of the contract, the vendor suffers no damage by allowing the vendee to do so. In this situation, if there has been substantial part performance or if the vendee has made substantial improvements in reliance on his contract, permitting the vendor to terminate the vendee’s rights under the contract and keep the installments that have been paid can result only in the harshest sort of forfeitures. Accordingly, relief will be granted whether or not time has been made of the essence.”
 
 (Barkis
 
 v.
 
 Scott,
 
 34 Cal.2d 116, 122 [208 P.2d 367]; see also
 
 Freedman
 
 v.
 
 The Rector,
 
 37 Cal.2d 16, 20-22 [230 P.2d 629, 31 A.L.R.2d 1].)
 

 This principle applies equally well to a tax forfeiture as is presented here.
 

 [13]
 

 There is no merit to be found in the argument of the county that the forfeited current taxes are equivalent to the forfeited portion of an incomplete redemption contract which
 
 *688
 
 works a forfeiture of installments as the "reasonable rental value” of the property. That, unlike the payments the Herringtons made, is done by agreement of the parties with full knowledge of the consequences.