These appeals are by plaintiffs, neighboring private property owners, from a partial summary judgment for defendant City of Boaz in an inverse condemnation action arising from the digging of a drainage ditch across plaintiffs' properties by defendants City of Boaz and Housing Authority of the City of Boaz. The grant of summary judgment was based on the grounds that the claims were barred by the two-year statute of limitations for claims against municipalities under § 11-47-23 and §§11-47-190, -191, and -192 of the Alabama Code of 1975. We reverse the judgment and remand the cause for trial on the issue of defendant City's taking of plaintiffs' property without compensation.
The plaintiffs assert that an official of the Housing Authority persuaded them each to grant a twenty-foot easement to the City of Boaz for the storm sewer and its future maintenance. The City paid them each one dollar "and other good and valuable consideration" for the easement. Plaintiffs assert that they were not paid the value of the property and did not waive further compensation.
Defendants' workmen first started work on plaintiffs' properties on October 28, 1976. They constructed a large open concrete drainage ditch some twenty feet in width. Plaintiffs allege that the ditch occupied more than the twenty-foot easement and that the defendants severely damaged plaintiffs' properties, excavating a large depression in each plaintiff's lawn, damaging trees on both properties, excavating and converting large quantities of plaintiffs' soil from the twenty-foot strip and from plaintiffs' lawns, and piling large heaps of dirt and debris on both lawns. The plaintiffs further allege that the defendants' current use of the ditch damages them. They assert that the ditch is constructed so that it does not drain well; water accumulates which smells foul and permits mosquitoes to breed; and that trash, debris, weeds, and raw human sewage collect in the ditch, causing a foul odor and a health hazard.
Plaintiffs assert that defendants worked on their property more or less continuously until December 10, 1976, returned during March of 1977 to haul off debris and worked on both properties from August 29 to September 1, 1977. At the trial, an official of defendant Housing Authority asserted that the construction was not yet complete.
On February 22, 1978, plaintiffs filed complaints against defendants City, Housing Authority, and S.J. Otinger Construction Company. On July 6, 1979, plaintiffs amended their complaints, setting them out in new form but specifically stating that they were "amend[ing] their complaint[s] heretofore filed." Plaintiffs alleged essentially the same facts, occurrences and damage as they had in their original complaints. They alleged misrepresentation, breach of agreement, trespass, nuisance, and conversion of dirt. On July 9, 1979, and February *Page 24 
4, 1980, they further amended their complaints to allege a taking of their property by defendants City and Housing Authority in breach of an implied contract and without just compensation, and to invoke the court's equity jurisdiction. The court consolidated the two actions and severed the following claims and set them for jury trial: Plaintiffs' claims against the Housing Authority and Otinger Construction Company, and plaintiffs' nuisance claim against the City arising out of events "occurring after July 6, 1979, and for six months prior thereto."
After trial, the court entered judgment in accord with the jury verdict for plaintiffs' claims for trespass and conversion of dirt against Otinger Construction Company and for breach of agreement and implied contract against defendant Housing Authority. The court granted defendant City's motion for summary judgment as to "all claims asserted against it in tort . . . and . . . for implied contract which allegedly arose because of the taking of plaintiff's property," on the basis of § 11-47-23, Alabama Code of 1975. The court further found:
. . . that the City of Boaz and The Housing Authority of Boaz have the right of ingress and egress on plaintiff's property, which was one of the subject matters of this suit, and the duty to do so, for the purpose of completing construction, removing debris, and for maintenance and operation of the drainage ditch referred to in this suit and, also, for removing dirt if the plaintiffs assert no claim thereto.
The plaintiffs appealed the court's final judgment granting the City's motion for summary judgment. After the appeal, the Housing Authority made payment into the circuit court of the damages awarded against the defendants.
In their appeal, the plaintiffs ask us to reverse the judgment and remand the cause for trial on the plaintiffs' inverse condemnation claim against the City. They assert that their action was not barred by § 11-47-23 as (1) the cause of action did not accrue until the taking was complete and (2) their amendments related back to the original February 22, 1978, complaint, which was filed less than two years after the cause of action accrued. They assert that the court should not have considered the testimony taken at trial as a basis for the motion for summary judgment and that the Housing Authority's payment of damages is not a satisfaction of the judgment and does not release the City from plaintiffs' claim.
The first issue presented is whether the statute of limitations has run on plaintiffs' inverse condemnation claim. Inverse condemnation is the taking of private property for public use without formal condemnation proceedings and without just compensation being paid by a governmental agency or entity which has the right or power of condemnation. Ex parte W.E.Carter, 395 So.2d 65 (1980). Such an action must be brought within the applicable statutory period. When the governmental entity in question is a municipality, an inverse condemnation claim must "be presented to the clerk for payment within two years from the accrual of said claim or be barred," § 11-47-23, Code of Alabama 1975. At what point does the cause of action accrue? We hold that the cause of action accrues when the taking is complete. If, as here, the City has full knowledge of the owner's asserted rights in the premises and has proceeded without exercising eminent domain powers in the manner prescribed by law, then the owner's inverse condemnation claim is timely if instituted before the project is completed, although more than two years after work was commenced.
In this holding, we are following a line of reasoning enunciated by the Supreme Court of the United States in UnitedStates v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789
(1947), and by the California Supreme Court in Pierpont Inn,Inc. v. State, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737
(1969). Dickinson concerned a taking due to the flooding of plaintiff's land by a federally-built dam. Pierpont involved plaintiff's land used for highway purposes. In the instant case, as in Dickinson, *Page 25 
 [t]he Government could, of course, have taken appropriate proceedings to condemn as early as it chose both land and flowage easements. By such proceedings it could have fixed the time when the property was "taken." The Government chose not to do so. It left the taking to physical events, thereby putting on the owner the onus of determining the decisive moment in the process of acquisition by the United States when the fact of taking could no longer be in controversy. . . . The Fifth Amendment expresses a principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding "causes of action" — when they are born, whether they proliferate, and when they die. We are not now called upon to decide whether in a situation like this a landowner might be allowed to bring suit as soon as inundation threatens. Assuming that such an action would be sustained, it is not a good enough reason why he must sue then or have, from that moment, the statute of limitations run against him. If suit must be brought, lest he jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him — for instance, the uncertainty of the damage and the risk of res judicata against recovering later for damage as yet uncertain. The source of the entire claim — the overflow due to rises in the level of the river — is not a single event; it is continuous. And as there is nothing in reason, so there is nothing in legal doctrine, to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized. An owner of land flooded by the Government would not unnaturally postpone bringing a suit against the Government for the flooding until the consequences of inundation have so manifested themselves that a final account may be struck.
331 U.S. 747-749, 67 S.Ct. 1384-1385.
Pierpont involved issues closer to the present case, as it was concerned with a construction project. In that case, the California court held that, having voluntarily elected not to condemn the property, the state
 may not now urge that respondent's formal claim was untimely because respondent reasonably awaited completion of the project in order to determine more accurately the exact extent to which its remaining property would be damaged. Certainly it is true that the extent of whatever severance damages were caused by the taking of respondent's land and the construction of the freeway project could be determined more accurately and more satisfactorily after the freeway was complete and in operation than would have been possible from a visualization of the project aided only by description and study of drawings and designs. These considerations contribute to the reasonableness of the rule here adopted quite apart from the fact that until construction had been completed, the plans for the freeway might have been substantially altered, the roadbed relocated or the entire project abandoned.
74 Cal.Rptr. 529, 449 P.2d 745.
This Court has held that in an action for damages for the obstruction of a street by a railroad company, the "claim for damages . . . arose from the completion of the work, and the failure [of the complainant] to take steps for the recovery of same within a year enables the respondents to invoke the statute of limitations of one year." South and North Ala. R.Co. v. Mauter, 202 Ala. 326, 80 So. 408 (1918); Whaley v.Wilson, 112 Ala. 627, 20 So. 922 (1896).
In the present case, the plaintiffs filed suit more than two years after the defendants commenced work on the project. There was testimony at trial by an officer of the Housing Authority that the project was not yet completed and the final judgment gave to the defendants "the right of ingress . . . on plaintiff's property . . ., and the duty to do so, for the purpose of completing construction. . . ." The project has not yet been completed; thus the statute of limitations has not run on their cause of action against the City.
Because we hold that the statute has not run, it is immaterial to the statute *Page 26 
of limitations issue whether the July 9, 1979, amendment relates back to the February 22, 1978, complaint or the July 6, 1979, amendment. However, for any other pertinent issues, the amendment does properly relate back. Under Rule 15 (c), ARCP, "[w]henever the claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." The claims asserted in the July 9, 1979, amendment arose out of the same events concerned in the February 22, 1978, complaint. That the amendment adds a new theory or revamps the format of the complaint is immaterial. See Rush v. Thomas DuckettConstruction Co., 380 So.2d 762 (Ala. 1979). When a new theory of liability is based upon the same facts and those facts have been brought to the attention of the opposite party by previous pleading, no prejudice is worked by allowing the amendment.Bracy v. Sippial Electric Co., 379 So.2d 582 (Ala. 1980). We hold that the amendment relates back to the original complaint.
The plaintiffs also assert that it was improper for the trial judge to refer to untranscribed testimony from the trial of the severed issues in considering the defendant City's motion for summary judgment. We agree. Under Rule 56, ARCP, a judge may consider affidavits, pleadings, depositions, answers to interrogatories, and admissions on file. The thrust of Rule 56 requires that the materials before the trial court for consideration on a motion for summary judgment be written documents. "Summary judgment must be granted or denied on the record which is before the trial court at the time the motion is heard." Engel Mortgage Co. v. Triple K Lumber Co.,56 Ala. App. 337, 321 So.2d 679, 684 (1975). It is proper on summary judgment for a court to take judicial notice of the record in prior litigation between the same parties in the same court, Ellis v. Cates, 178 F.2d 791 (4th Cir. 1949), or of its own records and of other cases including the same subject matter or questions of a related nature between the same parties, Fletcher v. Evening Star Newspaper Co., 77 D.C. Cir. 99, 133 F.2d 395 (1942). A record is a written memorial of all the acts and proceedings in an action or suit in a court of record. State ex rel. Whatley v. Brewer, 19 Ala. App. 291,97 So. 160 (1923).
The last issue presented is whether payment of the damages awarded against the Housing Authority releases the City as a joint defendant of the Housing Authority. The City asserts that the Housing Authority's payments of $8,462.15 for plaintiffs McClendon and $9,899.50 for plaintiff Dickinson to the clerk of the circuit court operates as a discharge. We disagree.
It is well settled in Alabama that while a party is entitled to full compensation for his injuries, there can be only one satisfaction thereof. If a plaintiff recovers judgment against one joint defendant and obtains satisfaction of that judgment, this operates as a discharge of the other defendant. Maddox v.Druid City Hospital Board, 357 So.2d 974 (Ala. 1978); Williamsv. Colquett, 272 Ala. 577, 133 So.2d 364 (1961). But payment of the amount of the judgment into court without participation by plaintiff and without his acceptance of the same is not such a satisfaction. Bradford v. Carson, 223 Ala. 594, 137 So. 426
(1931); Blann v. Crocheron, 20 Ala. 320 (1852).
 To determine the plaintiff's right to elect [his remedy], he must act. Were he to order execution to issue on the judgment in his favor; or, in case of payment to the clerk, as in this case, were he to accept the money, his election would be considered as having been made; and it might be specially pleaded by a co-trespasser, against whom a suit was then pending, as an estoppel. But to make the plea good, it should aver that the sum so paid in satisfaction was accepted by the plaintiff as such. [Emphasis in original.]
Blann v. Crocheron, 20 Ala. at 321.
The plaintiffs here have not accepted defendant Housing Authority's payment. There has thus been no satisfaction of the judgment and no discharge of the defendants. *Page 27 
We thus hold that the trial court was incorrect in granting defendant City's motion for summary judgment. We reverse the judgment and remand the cause of action for trial on the issue of defendant City's taking of plaintiffs' private property without just compensation.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.