Robert Lee Catrett, Wesley Grant, John Gregg, Davida Hastie, Willard Penry, Henry Vick, and Cecil Ward[1] (hereinafter referred to collectively as "Catrett") seek a reversal of a summary judgment in favor of defendant Baldwin County Electric Membership Corporation ("the Cooperative") and J. Thomas Bradley, Jr., Tommie Werneth, John D. Taylor, Jr., Peggy R. Hanover, and Aubury L. Fuller, in their individual capacities as trustees of the Co-operative (hereinafter referred to collectively as "BCEMC"). We affirm.
 Facts and Procedural History
This case arises from a dispute between BCEMC and various members of the Co-operative over the procedures for the nomination and election of trustees and the approval of minutes taken at the annual meeting of the members of the Cooperative. The Cooperative is an electric cooperative that supplies electric services to customers in Baldwin and Monroe Counties. Members of the Cooperative elect a seven-member board of trustees at an annual meeting. The president of the board of trustees appoints a nominating committee to nominate candidates for available trustee positions. According to the Cooperative's bylaws, nominations may also be made from the floor by the members at the annual meeting. In July 1999, the bylaws were amended to allow members to vote either by mailing in their ballots before the annual meeting or by voting at the annual meeting. However, because mail in ballots have to be returned before the annual meeting, there was no provision for mail-in voters to vote for candidates nominated from the floor.
Before the 2004 annual meeting convened, Catrett filed a two-count complaint against BCEMC. Count I sought a judgment declaring, among other things, that BCEMC must "comply with the By-laws of [the Cooperative] by following Robert's Rules of Order in the election process of the trustees" and amend the bylaws to provide for special or regular meetings at which the membership could receive and make nominations for trustees before the time that any voting would take place. Count II of the complaint sought preliminary and permanent injunctions, first, prohibiting the Cooperative from holding the annual meeting scheduled for December 9, *Page 198 
2004; second, compelling the Cooperative to amend its bylaws to allow for a special nomination meeting before the annual meeting; and, third, prohibiting the Cooperative from submitting the minutes from the March 28, 2003, annual meeting to the membership for approval without allowing for corrections.
On November 24, 2004, the trial court held a hearing on the preliminary injunction. At the hearing, Catrett offered his first amended complaint, which sought a preliminary injunction enjoining the Cooperative from tabulating any votes at the annual meeting until after all nominations had been received and submitted to the membership for a vote. The first amended complaint did not allege any new facts. Following the hearing, the tidal court granted the injunctive relief in part: the annual meeting could proceed on the scheduled date, but the chairperson of the meeting would have to allow nominations for the office of trustee to be made from the floor; if nominations were made from the floor, then new ballots would be printed and mailed to members of the Cooperative; and the chairperson was required to accept motions from the floor for corrections or additions to the minutes of the 2003 annual meeting. BCEMC petitioned this Court for the writ of mandamus directing the trial court to set aside its order (case no. 1040362), and, two days later, also appealed the trial court's order to this Court (case no. 1040371).[2] This Court consolidated the appeal and the petition for the writ of mandamus for the purpose of writing one opinion.
The annual meeting was held on December 9, 2004. Nominations were received for additional trustee candidates, and there was a motion to amend the minutes of the 2003 meeting. However, in the absence of a quorum, the motion was continued until the next annual meeting.
In May 2006, this Court denied BCEMC's petition for the writ of mandamus and affirmed the preliminary injunction entered by the trial court. Baldwin County Else. Membership Corp. v.Catrett, 942 So.2d 337 (Ala. 2006) ("Catrett I"). In June 2006, Catrett moved the trial court for leave to amend his complaint. The trial court granted Catrett's motion. Catrett's second amended complaint added a count seeking a declaration that BCEMC had committed a breach of contract and had violated the Constitution of Alabama of 1901 by "impairing the obligations of contracts"[3] when it amended the bylaws to *Page 199 
allow for mail-in voting. In February 2007, BCEMC moved for a summary judgment arguing, among other things, that Catrett's second amended complaint was barred by the statute of limitations and by the doctrine of res judicata. The trial court granted BCEMC's motion on both grounds; Catrett now appeals.
 Issues
Catrett raises three issues on appeal. First, he argues that the trial court erred in entering a summary judgment in favor of BCEMC on the ground that Catrett's second amended complaint is barred by the doctrine of res judicata. Second, he argues that the trial court erred in entering a summary judgment in favor of BCEMC on the ground that Catrett's second amended complaint did not relate back to the original complaint, and, therefore, was barred by the statute of limitations. Third, he argues that the trial court erred "in not addressing the issue presented regarding continuing breach of contract for each new mail-in vote." Catrett's brief at 4.
 Standard of Review
"On appeal, this Court reviews a summary judgment de novo."DiBiasi v. Joe Wheeler Elec. Membership Corp.,988 So.2d 454, 459 (Ala. 2008) (citing Ex parte Essary,992 So.2d 5, 8 (Ala. 2007)). In order to uphold a summary judgment, we must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala. R. Civ. P. "When the movant makes a prima facie showing that those two conditions have been satisfied, the burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact." Blue Cross Blue Shield ofAlabama v. Hodurski, 899 So.2d 949, 952 (Ala. 2004). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989); see also
§ 12-21-12(d), Ala. Code 1975. In reviewing a summary judgment, we must view the evidence in the light most favorable to the nonmovant. Johnny Ray Sports, Inc. v. WachoviaBank, 982 So.2d 1067, 1071 (Ala. 2007). "Finally, this Court does not afford any presumption of correctness to the trial court's ruling on questions of law or its conclusion as to the appropriate legal standard to be applied." DiBiasi,988 So.2d at 459.
 Analysis
As a threshold issue, we first address Catrett's argument that the trial court erred in entering a summary judgment in favor of BCEMC on the ground that Catrett's amended complaint was barred by the applicable statute of limitations because it did not relate back to the original complaint. The trial court's order states that the original complaint
 "never raised the constitutionality of the statute which authorized the bylaw change to allow mail in voting. The original complaint only related to the application of [the Cooperative's] bylaws with respect to nominations from the floor [at the 2004 annual meeting] and the placement of those nominations before the entire membership for voting. Therefore, the Court determines that the [second] amended complaint cannot relate back to the filing of the complaint in this case." *Page 200 
Although the trial court refers to Catrett's claim as a constitutional challenge, Catrett does not, in the second amended complaint, ask the court to invalidate any statute. Rather, Catrett requests a judgment declaring that an amendment to the Cooperative's bylaws, enacted pursuant to statutory authority, is "invalid."
In Catrett I, this Court noted that "[t]he right to vote is granted to all members of the Cooperative under the bylaws and by statute. Thus, each member of the Cooperative had a contractual right to vote." 942 So.2d at 345-46 (footnote omitted). Therefore, Catrett's claim appears to be a breach-of-contract claim based on his allegation that the amendment to the bylaws violates his contractual right to vote. Neither Catrett nor the trial court in its order granting BCEMC's summary-judgment motion states the applicable statute of limitations; however, it is undisputed that unless the second amended complaint relates back to the original complaint, it is barred by the applicable statute of limitations.
Catrett avers that the claim in the second amended complaint should relate back to the original complaint because, he says, it is "an alternate theory of recovery for the breach of contract and deprivation of voting rights." Catrett's brief at 37. BCEMC argues that because Catrett has alleged a cause of action for breach of contract, the six-year statute of limitations applies.[4] Our review of the law indicates that subsections (4) and (9) of § 6-2-34, Ala. Code 1975, appear to supply the correct statute of limitations to be applied in this case, and Catrett has made no argument to the contrary. The second amended complaint specifically requests a court order invalidating the Cooperative's amendment of the bylaws that occurred on July 15, 1999. As noted previously, this is a contract claim, and Catrett's second amended complaint was not filed until July 5, 2006, more than six years after the alleged breach of contract. Therefore, unless Catrett's second amended complaint relates back to the date of his original complaint, November 18, 2004, those claims are barred by the statute of limitations.
Rule 15(c), Ala. R. Civ. P., provides, in pertinent part, that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Catrett cites two of this Court's previous decisions for the general proposition that when an amendment "adds a new theory of liability . . . based upon the same facts as the original theory and those facts have been brought to the attention of the opposite party by a previous pleading, no prejudice is worked by allowing the amendment." Catrett's brief at 37-38 (citing Money v. Willings Detroit Diesel,Inc., 551 So.2d 926, 929 (Ala. 1989) ("`Where, as here, the proffered amendment would "merely change the legal theory of a case or add an additional theory, but the new or additional theory is based upon the same set of facts and those facts have been brought to the attention of the other party by a previous pleading, no prejudice is worked upon the other party."'" (quoting *Page 201 Whitfield v. Murphy, 475 So.2d 480, 483 (Ala. 1985), citing in turn Bracy v. Sippial Elec. Co.,379 So.2d 582, 583 (Ala. 1980)))); see also McClendon v. City ofBoaz, 395 So.2d 21, 26 (Ala. 1981) ("When a new theory of liability is based upon the same facts and those facts have been brought to the attention of the opposite party by previous pleading, no prejudice is worked by allowing the amendment."). Catrett argues that his original pleading deals with voting rights, the election process for trustees of the Cooperative, and violations of the by-laws of the Cooperative. He argues that his second amended complaint, dealing with similar issues, relates back to the claims and issues of the initial pleading because, he says, "[t]he initial complaint requested the restoration of the contract rights of the members [of the Cooperative] and [sic] force [the Cooperative] to restore the voting back in the hands of the members at the annual meeting." Catrett's brief at 38-39.
"However, this Court has also held that where the plaintiff, in an amendment filed beyond the statutory limitations period, alleges facts that were not alleged in the original complaint or attempts to state a cause of action that was not stated in the original complaint, the amendment is time-barred." ConAgra,Inc. v. Adams, 638 So.2d 752, 754 (Ala. 1994). In this case, the factual allegations in the second amended complaint are different from those in the original complaint. Although both the original complaint and the second amended complaint quote extensively from the Cooperative's bylaws, no section of the bylaws appears in both. Moreover, the original complaint presents facts confined to the period between the Cooperative's annual meeting held on March 28, 2003, and the annual meeting scheduled for December 9, 2004. Based on these initial facts, Catrett sought to enforce compliance with the bylaws that existed at that time and to compel the amendment of the bylaws to allow for a special nomination meeting to be held before the annual meeting. In contrast, the second amended complaint alleges facts confined to a period between the Cooperative's annual meeting held on October 31, 1998, and the adoption of the amended bylaws in July 1999. Based on these additional facts, Catrett's second amended complaint seeks to invalidate an amendment to the bylaws that occurred almost four years before the occurrence of the facts that are the basis of his allegations in the original complaint.
Also, the second amended complaint alleges a cause of action that is at odds with the averments of the original complaint. Rather than seeking to invalidate the amendment to the Cooperative's bylaws that allows for mail-in voting, the original complaint implicitly accepts the mail-in voting amendment and demands that the Cooperative "be required to follow the By-laws of the [Cooperative] in the election process for trustees." Amendment to complaint at ¶ 6. Although the original complaint calls for an amendment to the bylaws "to provide for a special meeting of the membership to receive the nominating committee's report for nominations of the trustees and to allow nominations from the floor prior to the vote of the membership for trustees at the annual meeting," it does not contest, or even mention, the bylaw that provides for mail-in voting on those nominations. Indeed, one may argue that a prior nominating meeting is important precisely because it permits mail-in voters to vote on nominations from the floor.
In contrast, the second amended complaint rejects any notion of voting by mailin ballots, arguing that the Cooperative bylaw provision that allows for it constitutes a breach of contract and an impairment of contracts in violation of the Constitution of Alabama of 1901. Thus, the *Page 202 
second amended complaint does not merely allege "a new theory of liability . . . based upon the same facts [that] have been brought to the attention of the opposite party by previous pleading." McClendon, 395 So.2d at 26. Instead, the second amended complaint relies on a set of facts that are different from and unrelated to the facts supplied in the original complaint and seeks relief that differs from the relief sought in the original complaint. Because the second amendment to the complaint "alleges facts that were not alleged in the original complaint [and] attempts to state a cause of action that was not stated in the original complaint, the amendment is time-barred," ConAgra, Inc., 638 So.2d at 754, and we, therefore, affirm the trial court's summary judgment in favor of BCEMC.
Catrett invites this Court to adopt a "continuing-contract" doctrine for determining when a breach of contract occurs, tolling the statute of limitations "until the last time BCEMC breach[ed] the contractual relationship with its members and denied them their voting rights as set forth in the by-laws." Catrett's brief at 40. However, even if we were inclined to accept Catrett's invitation, an application of the continuing-contract doctrine would not affect the outcome of this case. Catrett's second amended complaint alleges that "[a] justiciable controversy exists between [Catrett] and [BCEMC] as to the proper method to amend the by-laws of [the Cooperative]." Based on this allegation, Catrett's second amended complaint requested two declarations: (1) that "[t]he amendment to the by-laws of [the Cooperative] in July, 1999, allowing for mail-in voting is invalid" and (2) "[t]hat any amendment to the by-laws of [the Cooperative] must be approved by the members at any annual or special meeting of the members." The second amendment to the complaint makes no mention of any alleged continuing breach committed by BCEMC. Based on these averments, it is clear that the breach complained of is the July 1999 amendment of the bylaws, not the subsequent instances of mail-in voting conducted in compliance with the amended bylaws. We therefore decline to adopt and apply the continuing-contract doctrine in this case.
Because we hold that Catrett's second amended complaint does not relate back to the original complaint and is therefore barred by the six-year statute of limitations, we pretermit discussion of Catrett's allegation that the trial court erred in applying the doctrine of res judicata. See DeFriece v.McCorquodale, 998 So.2d 465, 470 (Ala. 2008) (citingSmith v. Equifax Servs., Inc., 537 So.2d 463, 465
(Ala. 1988) ("In any event, we will affirm a summary judgment if that judgment is proper for any reason supported by the record. . . .")).
 Conclusion
Even when the evidence is viewed, as it must be, in the light most favorable to Catrett, Catrett's second amended complaint alleges facts and argues grounds for relief that were not presented in the original complaint. We, therefore, hold that the second amended complaint does not relate back to the original complaint and is, therefore, time-barred. For this reason, we affirm the trial court's summary judgment in favor of BCEMC.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] After we issued an earlier decision in this action, David Harms and George P. Kaiser were voluntarily dismissed as plaintiffs. See Baldwin County Elec. Membership Corp. v.Catrett, 942 So.2d 337 (Ala. 2006).
[2] On the same day that BCEMC appealed the trial court's order, the trial court amended that order to delay, until this Court has ruled on the appeal, the Cooperative's obligation to print and mail new ballots to the membership.
[3] The Constitution of Alabama of 1901, § 22, provides:
 "That no ex post facto law, nor any law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment."
Catrett apparently bases his argument of a constitutional violation on the fact that when the 1999 amendment to the bylaws was proposed, the board of trustees adopted a resolution authorizing voting on the proposed amendment by mail-in ballot, pursuant to § 37-6-9(b), Ala. Code 1975, which governs the operation of electric cooperatives. Section 37-6-9(b) provides, in pertinent part:
 "Voting shall be in person, but, if the by-laws so provide, may also be by proxy or by mail, or both; provided, however, notwith standing any contrary provision in the by laws of the cooperative, the board of trustees, by resolution, may authorize voting by mail on bylaw adoption, amendment, or repeal and, in such event, the board of trustees shall also specify the procedures to be followed in such mail voting. If the bylaws provide for voting by proxy or by mail, they shall also prescribe the conditions under which proxy or mail voting shall be exercised."
[4] Alabama Code 1975, § 6-2-34, provides:
 "The following must be commenced within six years:
 ". . . .
 "(4) Actions founded on promises in writing not under seal;
 ". . . .
 "(9) Actions upon any simple contract or specialty not specifically enumerated in this section." *Page 203